Let's see, California Self-Insured Security Fund v. Larbor Industries. Good morning, Mayor. Please report. My name is Louis J. Ciz of Nixon Peabody Council to the appellant and cross-appellee California Self-Insured Security Fund. I was with the firm of Thielen until Thielen dissolved and then moved to Nixon Peabody, and so that's in the record as well. We have filed a substitution of counsel. This is an appeal of an order that disallowed the fund's excise tax claim, so the issue before the court is whether the fund is entitled and to the extent to which the fund is entitled to an excise tax claim, which is a priority unsecured tax claim under the Bankruptcy Code. I'll be referring to my client as the fund. I'll be referring to the appellee and cross-appellant as the debtor. Both the Bankruptcy Court and the Bankruptcy Appellate Panel, which I'll refer to as the BAP, determined that the fund had established its entitlement to an excise tax claim. The question was whether the transaction date was correctly ascertained such that the tax could be exit or such that the transaction could be taxed appropriately. Both the Bankruptcy Court and the Bankruptcy Appellate Panel, the BAP, determined that the fund had established a four-part Lorber test, four prongs, and also a fifth prong under the George Court test. What the Bankruptcy Court and the Bankruptcy Appellate Panel disagreed on with respect to the fund's appeal was what is the transaction that's supposed to be taxed. The transaction date, is that right? That's correct, Your Honor. And the question is whether that was post-petition or pre-petition. That's correct. That's correct, Your Honor. The fund believes that this Court has already determined how to determine what a transaction and a transaction date are under the DeRoche case. In DeRoche, this was an Arizona fund. It was an uninsured fund. Those are distinctions, but really the similarities outweigh the distinctions. Isn't that a significant distinction between the uninsured fund and the self-insured fund? I don't believe so, Your Honor. I think it's a distinction, but I believe that the DeRoche test is the best workable and predictable test that should be adopted, whether it's an uninsured or a self-insured fund. The Bankruptcy Court determined, without the benefit of briefing and oral argument, that the transaction should be the date on which the fund was the debtor was allowed to self-insure. That significantly is not an event the debtor had control over. The Bankruptcy Appellate Panel determined that the transaction and the transaction date would be the date on which the fund was obligated to take over and pay these claims. That, too, is not a voluntary or an event which is in the control of the debtor. DeRoche would say, or DeRoche indicates, that that's not how you evaluate what a transaction is, because a transaction should be something the debtor has control over. So what DeRoche informs this Court, and certainly we support, is that the transaction is where the, is an event where the employee is being employed during a time of, in DeRoche, uninsured, uninsurance, no insurance. In our case, the act of the employee being employed at a time of self-insurance, the transaction. Doesn't the debtor have control over the time when the self-insurance fund responsibility kicks in? Because it's his breach. That's correct, Your Honor. It may be the debtor's breach, but it's up to the Director of Industrial Relations to determine, to revoke the debtor's opportunity to self-insure or ability to self-insure. But doesn't that follow from the fact of breach? It might follow. It doesn't always follow. Sometimes those breaches can be cured. Sometimes the Director doesn't recognize that the debtor is in breach, and that period of self-insurance goes on. There are, indeed, times when the debtor is woefully undersecured. That is, they've posted some collateral to secure that right to self-insure, but the period of self-insurance goes on. These are problems with the way in which the Bankruptcy Court and the Bankruptcy Appellate Panel have decided to craft this test for transaction and transaction date. But those problems are ameliorated or resolved by the DeRoche test for self-insurance as well as for uninsurance. So how would you fix the date? The date, the transaction date, would be a date on which a worker is injured so long as a couple of things are true. One, that the worker is injured during the three-year window, the reach-back period, prior to a bankruptcy petition date. Two, that during that period of time the debtor was in a period of self-insurance. And three, that the fund ultimately had to pay that claim or a portion of that claim or a portion of that debtor, that worker's claim, and seeks reimbursement from the estate. But you use the word ultimately, which tends to lead to the conclusion that the BAP got to, because the point in time when the fund has to pay seems to be more logical as the transaction date, not when the employee is injured, because the fund doesn't have to pay just if an employee is injured. Your Honor, I understand your point and I appreciate it. And I think that that's where we get into trouble when we try and too closely analogize an uninsured situation to a self-insured situation. And let me explain why I say that. In an uninsured situation, it's clear that either there's insurance or there's not insurance. And if the employee is injured and there's no insurance, that's the end of the analysis. With a self-insurance situation, and this is common with the fund, there could be a worker that's injured in that three-year period prior to the petition date. And it could also be the case that the employer is honoring its self-insurance obligations at that time. However, a worker's injury or the compensation for that worker's injury may span years and years and years. And at some point in time, either prior to the petition date, which is the typical case, or sometimes even after the petition date, which is this case, the debtor may default on its self-insurance obligations and then the fund takes over. And using my example of the worker who was injured within that three-year period and at that time the employer was self-insuring, if that worker continues to have compensation claims, that is, it's the same injury and he or she needs more care, and if there is not sufficient collateral to pay that person's claim that was posted by the debtor, the fund has to pay that claim, the balance of that claim. And that's why, Your Honor, I think it's important to focus on the DeRoche test because it's a test that is fairly easy to analyze from a debtor's perspective and from the fund's perspective. In the event that there are injuries within that three-year period, in the event that they can't be paid in full by the debtor, then the fund pays the balance of those claims and seeks reimbursement. And let me give you an example of how it's unworkable from the perspective of both the Bankruptcy Court and the Bankruptcy Appellate Panel. But the Bankruptcy Appellate Panel first. The BAP indicated that the transaction date was post-bankruptcy. That would mean that every single claim that the fund has to pay and seek reimbursement from would be an administrative priority claim. It rises in level of priority, not lowers, because it happened after the bankruptcy petition date. That's the taxable event according to the Bankruptcy Appellate Panel. In contrast, the Bankruptcy Court would go to the other end of the spectrum. The Bankruptcy Court said, well, the transaction date should really be the date that the employer was first able to self-insure. Again, not something in their control because the director has to make that decision. But in any case, that event can happen 50 years prior to the time that it files bankruptcy. That means that there's no way that any of these claims that the fund has to pay would be entitled to any priority at all. Those are extreme situations. What the workable test under DeRoche, it does work, because it does keep the priorities level or, sorry, it keeps them narrow, I should say, which is what Howard Delivery suggests. That's the Supreme Court decision. And it's also a workable result. If the worker is injured within that 3-year period, and that's what the statute really contemplates, it's that 3-year window, not a window far beyond 3 years. Let me stop right there and explain what I mean by that. Let's say under the Bankruptcy Appellate Panel definition of transaction that the debtor defaults on its workers' compensation obligations within the 3-year window. Well, that means that that's the transaction date, that's the taxable event, so that to the extent that the fund has to pay all these worker claims, including workers who were injured 40 years ago, to the extent that the fund has a reimbursement claim, it has a priority, eighth priority tax claim for all of those reimbursement obligations that it paid. That's a pretty, in some cases, that could be a very big priority claim, whereas what DeRoche suggests is that it's a narrow window. We focus on the injuries occurring within that 3-year window, and it has to be a self-insurance, and the fund has to pay those claims. Again, oftentimes the fund is paying those claims years after a self-insured employer defaults and then goes into bankruptcy, and that's just the way these cases work out. And so the fund has to look forward and look backward. It's prospective and retrospective in terms of its obligations, whereas in an uninsured context, that state fund only focuses on what happens right at that time, not in the future, not in the past. I'm going to reserve the balance of my time for rebuttal. Thank you. All right. Thank you, Counsel. Good morning, Your Honors. May it please the Court, I am David Poitras from Jeffer Mangels, Butler & Marlborough. We represent the appellee and cross-appellant, the liquidating trustee, and the sort of reorganized debtor, Warbur Industries. Your Honors, I think the analysis in this case begins and ends with this Court's holding in In re. George. In re. George is the most recent decision of this Court dealing with the priority issue of workers' compensation claims, and so far as I can tell, it is the only decision of this Court which deals with California law regarding the allowability of workers' compensation claims as 507-88 priority claims in bankruptcy cases. And George says no. George says they are not priority claims. I think, in part, Counsel made my argument here today. I think I heard during the presentation that the appellant does not believe that there is a material distinction between whether or not the fund, that issue, is the uninsured fund versus the self-insured fund. George involved the uninsured fund. George says it's not a priority claim. The only way the appellant can get around George is to somehow ignore it. The Court will note in appellant's argument, it referred to George once in passing. George is the case. George. What does George say about the transaction date? George. George, I believe, actually says there is no transaction. To quote George specifically. Well, it says the only relevant transaction was hiring the employee who got injured, but hiring does not occasion a trust fund claim in California, neither does an employee injury. But it goes on to say, Your Honor, well, it starts out, George starts out by saying the trust fund claim against the Georges was not an exaction on a transaction the Georges made. You think about a classic transaction. It's a give and a take. There's two people. There's a corresponding set of events. That's talking about an uninsured fund. I think either, Your Honor. There's no, in my opinion, there is no transaction, whether it's self-insured or uninsured. It just isn't a, quote, transaction. At some point. Well, in the uninsured context, when is the transaction? I'm sorry? In the uninsured context, what is the transaction date? Your Honor, what DeRoche said was the date that the employee is injured. What George seems to say to me is there is no transaction, although you read the language that Your Honor just read, which says the only relevant, their only relevant transaction was hiring the employee who got injured. So the transaction is hiring the employee, not when the employee got injured. But that's talking in the context of an uninsured fund. Correct, Your Honor. Isn't there a difference when you're talking about a self-insured fund? Because there is a transaction when the self-insured fund has to come up with money because of breach of obligation. The self-insured employer fails to comply with his obligations to the self-insurer and the fund steps in. Isn't that the transaction date? Your Honor, I do not view that as a transaction. Why not? There is no give and take. There's a default. It's simply a default. But it has the virtue of being an ascertainable event. Certainly. It's certainly an ascertainable event, as is being uninsured. The date one becomes uninsured, as is, I suppose, a date that an employee gets injured. Those are all ascertainable events. But in my view and I think George's view, those are not transactions. What George concludes with is it is hard to squeeze the absence of a transaction, which triggers California trust fund liability, into the bankruptcy statute of requirement of a transaction occurring during the three years preceding bankruptcy. Right, and then it goes on to conclude that's why there's no excise tax at issue. Correct. So your case, you're arguing that there's an excise tax. So we need to find a transaction. So what's the transaction in your case? It's different. It's not the same thing. I mean, I know you're arguing it is, but it's not. We need to find what is the transaction, the relevant transaction for purposes of 507, and then when did it occur? Your Honor, in my opinion, again, I'm sticking to my story. I don't think there is a transaction. So you don't think there's an excise tax? I don't. There needs to be a transaction for there to be an excise tax allowable under 507-88 of the Bankruptcy Code. In this case, there was no such transaction. There is no such tax. And so this dovetails back into the narrow construction issue. You sort of start out with the premise that priority claims are narrowly construed in bankruptcy. That follows both from this Court's prior holding in a prior Lorber Industries case, which goes back about 26 years, where the Court said, quote, broad priority classifications hamper the goal of equitable distribution of the bankruptcy estate and penalize general creditors. Howard Delivery, which is a Supreme Court case, echoed that recently in a 2006 decision where it says priorities under Section 507 of the Bankruptcy Code are to be strictly construed. But that doesn't really answer our questions. I mean, those are policy statements. Well, they are, Your Honor. But you have George, which stands for the proposition that workers' compensation reimbursement claims in California are not priority claims. And so what I'm saying is, with the backdrop of the Supreme Court and prior decisions of this Court, which says the policy is against expanding the allowance of priority claims, moving into the economy that we're in, this particular case would not have confirmed a plan if this had been a priority claim. We're going into a cycle here where you'll have untold business failures. If we expand the universe of priority claims, you're going to have cases that cannot reorganize for the sole reason that state funds like this have priority claims which need to get paid in full ahead of all other creditors. Not only will other creditors suffer, cases will not confirm. Employees will not have jobs. Cases will not come out of bankruptcy. That is the policy espoused previously by this Court and the Supreme Court. But doesn't this case fall squarely within the definition of an excise tax? Put aside your transaction date argument. On the face of it, isn't this an excise tax under George? But for the additional prong of George, which deals with the hypothetical private party creditor, I would agree with you. Well, you have to answer that question whether there's a similarly situated private creditor. Correct, Your Honor. You can argue that either way. Well, all you need to do is imagine one under George, and it's not a priority claim. That's what George says. And so I'll give you three examples. The way these things typically play out is you'll have an uninsured debtor. You'll have an uninsured employer. George is clear. In California, that is not a priority claim. So you have an employer who either knowingly, willingly, or just doesn't know what's supposed to have workers' compensation insurance. It goes out and it operates for a while, and it files bankruptcy, and there's $100,000 in workers' compensation claims. There is a California fund that has to pay those claims. Those are not priority claims under George. Scenario number two, you have an employer who has private third-party insurance. The way those policies typically work is that there are premiums are paid. There are deductibles. We'll say there's a deductible of $5,000 a claim. And the insurance company has a reimbursement agreement with the employer whereby if the insurance company has a claim against the employer for that amount, which it can go against a letter of credit if it has a letter of credit, or it can go against unpaid premiums if it has a security agreement. But in that scenario, if the debtor files bankruptcy, and if on the date of bankruptcy there is, say, $50,000 in deductibles outstanding that it hasn't paid, that is not a priority claim. The insurance company is not a governmental entity. The insurance company cannot assert an excise tax claim. It is in the exact same position as the fund, in that case having a right of reimbursement from the employer because it paid the claim, but it is not entitled to a priority claim because it's not a governmental entity. Third scenario is that debtor is self-insured. In this particular case, the debtor was properly self-insured through the petition date. And so what the fund, this fund, is trying to suggest is in the case where a debtor properly self-insures in accordance with applicable state law and is later unable to pay those claims, those claims should somehow be entitled to a priority, whereas the uninsured employers are not, clearly under George, and the insurance company's claims, which are exactly the same, are not allowed a priority under George or any circuit so far as I can tell because, again, they're not a governmental entity, so they cannot assert a tax claim. So are you really, what you're really concerned about is the sentence in the BAP opinion saying that, okay, it's an excise tax, that the transaction occurred post-petition, so it doesn't, it isn't entitled to priority, but it may be entitled to priority because it's also an administrative claim. Well, I'm still not going to say there's a transaction, but I would be concerned representing a debtor in possession in a case where the case didn't make it. It's not going to reorganize, although that isn't the end of the day in a bankruptcy case. This particular case was a liquidating bankruptcy case. The goal is to maximize the value of the assets to get the highest possible recovery for creditors, not just the fund, for creditors as a whole. And so if in every case that doesn't make it for a self-insured debtor, that that becomes an  administrative claim. I mean, those are Chapter 7s, those are wiped out, those are ugly liquidations that will not maximize the value of assets for recovery of creditors. Moreover, I don't think even if one were to say that is the transaction, I don't think those are administrative claims. I don't think we even need to go there. Again, I think there are disastrous consequences if the holding is that whenever a self-insured debtor files bankruptcy in California and doesn't make it, that all of those, the claim in this case is $2.7 million. The total amount that will be distributed to creditors in this case is maybe $500,000. And all this will lead to, I mean, such a result will lead to, frankly, if possible, Chapter 11 debtors filing bankruptcy in other jurisdictions. And that already happens in numerous instances for, as the Court will see, cases getting filed in Delaware and whatnot. But I just don't think it is a correct result, both from a policy standpoint and from an interpretation of the statute, the definition of the transaction, and where George ends up. The final example I'll give you, because I'm running out of time, is it could clearly be a situation where on the date of bankruptcy there are $50,000 in workers' compensation claims outstanding owed to either its employees or to providers of services to the employees for workers' compensation claims. Under the Bankruptcy Code, absent confirmation of a plan of reorganization or an order of the Court under Section 105 of the Code, which basically says the Court can do anything it needs to do to make the case work, those are unsecured claims. Debtors still in business, debtors self-insured, properly self-insured, can't pay those. But in the hands of the employee, in the hands of the provider, those are general unsecured claims. They don't get the step-up that the self-insured fund is arguing for. So what is the result? They get paid in bankruptcy dollars, but the fund doesn't. The fund puts them into default because somehow, because they can't pay those, the fund has to pay those, and it just doesn't work. George works. And in the briefs, in the arguments, counsel never distinguishes George. All counsel can do is ignore George and say DeRoche, but DeRoche is Arizona. We're in California. George is what controls this case. And that's what we're trying to do, is to not only find the bankruptcy court's holdings, but to also find that there is not a transaction in a situation like this which would have caused the petition. All right. Thank you, counsel. Thank you, Your Honors. Your Honor, let me go right to George. The reason we don't focus on George in our briefs is because George doesn't deal with a transaction. That was dicta in George. It's what got the bankruptcy court to... Well, it says there's an absence of a transaction. But here we have a default. Isn't that a transaction? A default would be an event. It simply isn't the event that I believe supports a workable solution to this issue. I believe that the workable solution is found in DeRoche. Even though DeRoche focuses on an uninsured fund, it applies and would be workable. Does it matter if we're looking at California? I'm just not sure that's the question, Your Honor. Does it matter what jurisdiction we're looking at, if we follow your suggestion? I think that Ninth Circuit law, of course, controls, I think, with respect to California. Because this is a California fund, and every State has their own uninsured fund, and in most cases self-insured, I think this Court should be focusing on California law, for example, the California Labor Code, which is what this fund is organized under. So I think California law supplies the rule of law with respect to the fund. And that's actually a transition into what happened in George. The reason that George, the reason that the George court determined, and by the way, the bankruptcy court picked up on this, in his opinion, the reason that the George court determined, or one of the reasons that it determined that that was not an excise tax was because that particular claim was a liquidated damages claim, which under the Labor Code, the court could determine that that wasn't an entitlement priority, because there was a way in which that court could determine that there were similarly situated creditors, such as other creditors that might have liquidated damage claims. Different here, we've got, when you're trying to analogize between a party that contracts to provide a service, such as a bonding company, versus an entity that is required by statute to step in and be the payor of last resort, which is the fund, that's a very different, it's a distinction with a difference, and that's what this statute is trying to deal with. We're talking about governmental units, instrumentality of the state that is required, absolutely, to step in and pay these claims. And there's a policy reason for that, it's because employees in California should have some comfort that if they get injured on the job, their claims are going to get paid, and that's what the fund is there to do. If you say the difference arises from the fact that this is a governmental entity, then why do you need the fifth element in the George case? It's superfluous. I don't disagree with you, Your Honor. I think that George... There could be no similarly situated claimant, unless it's another government claimant. That's your position. I agree with that, Your Honor. That doesn't seem to be what George has in mind. Well, I think what George had in mind was trying to, again, narrow these priorities to the extent it can, and in that case, there were facts that supported that. Again, because of the labor code provision that recognized that that was a liquidated damage claim, both the Bankruptcy Court and the Bankruptcy Appellate Panel recognized that that wasn't the case with respect to this fund, and therefore identified this as an excise tax. So under the Bankruptcy Court's decision where he finds there was a transaction, it was when the debtor applied for and was granted the self-insured status, which is outside of three years. Correct. How would that be treated in the bankruptcy proceeding? Would it be discharged? If that were the test that this Court were to adopt, then it would depend on when a self-insured employer got the ability to self-insure. If this was a company, if that occurred within the three-year period, then we've got priority. If it occurred outside the three-year period, then the fund simply has a general unsecured claim for the extent to which it pays these claims and seeks reimbursement. What was the date of Barber Industries filing for self-insured status and obtaining it? Do you know? It was outside the three-year period. I don't have the date at my ready, Your Honor, but it was outside the three-year period. So the funds claims would then just be in the mix under the Bankruptcy Court's decision, unsecured, no priority? Correct. To the extent that those were injuries that occurred prior to the bankruptcy petition date. And there is a period of self-insurance, whether it's the fund taking over or not, if that employee is injured after the petition date, we always assert that that isn't an administrative claim. But that's a different issue. Thank you, Your Honor. May I just sum up what we're seeking then? Well, all right. What are you seeking? Essentially, the fund is asking this Court to affirm the Bankruptcy Court and the Bankruptcy Appellate panel's decision with respect to excise tax, reverse with respect to transaction, and send this matter back to the Bankruptcy Court so that there can be determination made as to the extent of the fund's priority claim. All right. Thank you, Counsel. The motion is submitted and the session of the Court is adjourned. Thank you. Thank you.
judges: Kleinfeld , Tallman, Trager, David G., Dgt